**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ERNEST EUGENE HOWARD, | § | |
| (TDCJ-CID #1580049) | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-12-0026 |
| | § | |
| RICK THALER, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM AND OPINION**

The petitioner, Ernest Eugene Howard, seeks habeas corpus relief under 28 U.S.C. § 2254,

challenging a 2009 state felony conviction for cocaine possession.  The respondent filed an answer

and motion to dismiss, (Docket Entry No. 12), with a copy of the state court record.  (Docket Entry

No. 9).  Howard filed a response.  (Docket Entry No. 13).  Based on careful consideration of the

pleadings, the motion and response, the record, and the applicable law, this court grants the

respondent's motion and, by separate order, enters final judgment.  The reasons are set out below.

**I.      Background**

A jury found Howard guilty of the felony offense of cocaine possession.  (Cause Number

1190594).  Howard pleaded true to the enhancement paragraphs relating to two prior convictions,

one for possession of a controlled substance (Cause Number 516369), and another for unauthorized

use of a motor vehicle (Cause Number 577072).  On June 8, 2009, the jury sentenced Howard to an

18-year prison term.  The Fourteenth Court of Appeals of Texas affirmed Howard's conviction on

October 19, 2010.  *Howard v. State,* No. 14-09-00550-CR (Tex. App. -- Houston [14th Dist.] 2011,

pet. ref'd) (not designated for publication).  The Texas Court of Criminal Appeals refused Howard's

petition for discretionary review on May 11, 2011.  On August 17, 2011, Howard filed an application for state habeas corpus relief.  On November 30, 2011, the Texas Court of Criminal Appeals denied the application without written order, on findings of the trial court, without a hearing.  *Ex parte Howard,* Application No. 56,936-03 at cover.

On January 3, 2012, this court received Howard's federal petition.  Howard contends that his conviction is void for the following reasons:

(1)    his right to due process was violated because he was incompetent to stand trial;

(2)    he did not voluntarily waive counsel, and his request for new counsel was denied;

(3)    he did not voluntarily waive counsel because he was incompetent;

(4)    the trial court abused its discretion by failing to conduct a *sua sponte* inquiry as to Howard's competence;

(5)    law enforcement lacked probable cause to arrest him;

(6)    he was subjected to an unconstitutional search and seizure; and

(7)    appellate counsel rendered ineffective assistance by failing to raise the following issues:

    a.    incompetence to stand trial;

    b.    ineffective assistance of trial counsel;

    c.    incompetence to waive counsel;

    d.    trial court error for failing to conduct an adequate inquiry into his competency;

    e.    factually insufficient evidence; and

    f.    unconstitutional search and seizure.

2

(Docket Entry No. 1, Petition for Writ of Habeas Corpus, pp. 6-7E).  The respondent argues that Howard's fourth ground is procedurally defaulted,[1] his fifth and sixth grounds are not cognizable, and his remaining grounds lack merit.  Each issue is analyzed below.

## II.    The Applicable Legal Standards

Howard's petition is reviewed under the federal habeas statutes, as amended by the Antiterrorism and Effective Death Penalty Act of 1996.  28 U.S.C. § 2254; *Woods v. Cockrell*, 307 F.3d 353, 356 (5th Cir. 2002); *Nobles v. Johnson*, 127 F.3d 409, 413 (5th Cir. 1997), citing *Lindh v. Murphy*, 521 U.S. 320 (1997).  Subsections 2254(d)(1) and (2) of the AEDPA set out the standards of review for questions of fact, questions of law, and mixed questions of fact and law that result in an "adjudication on the merits."  An adjudication on the merits "is a term of art that refers to whether a court's disposition of the case is substantive, as opposed to procedural."  *Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir. 2000).

The AEDPA provides as follows, in pertinent part:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[1]  The Respondent argues that this claim is procedurally barred because the state habeas court determined that the trial court error claim was a record claim that should have been raised on direct appeal.  Although the respondent is correct, this court will consider the merits of this claim, in the interest of efficiency.

> (e)(1)  In a proceeding instituted by an application for a  writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

A federal court may not issue Howard the relief he seeks unless the Texas court's adjudication of his claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  The legal application must be "objectively unreasonable," meaning more than merely "erroneous or incorrect."  *Williams v. Taylor,* 529 U.S. 362, 409, 411 (2000) (internal quotation marks omitted); *Tucker v. Johnson,* 242 F.3d 617, 620 (5th Cir. 2001). For example, a decision unreasonably applies clearly established law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams,* 529 U.S. at 407-08.  The focus is on the state court's ultimate decision, not whether the state court "discussed every angle of the evidence."  *Neal v. Puckett,* 286 F.3d 230, 246 (5th Cir. 2002) (en banc).

A state court's factual findings are entitled to deference on federal habeas corpus review and are presumed correct under 28 U.S.C. § 2254(e)(1), unless the petitioner rebuts those findings with "clear and convincing evidence." *Garcia v. Quarterman,* 454 F.3d 441, 444 (5th Cir. 2006) (citing *Hughes v. Dretke,* 412 F.3d 582, 589 (5th Cir. 2005) and 28 U.S.C. § 2254(e)(1)).  This deference extends not only to express findings of fact, but to the implicit findings of the state court as well. *Garcia,* 454 F.3d at 444-45 (citing *Summers v. Dretke,* 431 F.3d 861, 876 (5th Cir. 2005); *Young v. Dretke,* 356 F.3d 616, 629 (5th Cir. 2004)).

In this circuit, *pro se* habeas petitions such as Howard's are construed liberally and are not held to the same stringent and rigorous standards as are pleadings filed by lawyers. *See Martin v. Maxey,* 98 F.3d 844, 847 n.4 (5th Cir. 1996); *Guidroz v. Lynaugh*, 852 F.2d 832, 834 (5th Cir. 1988); *Woodall v. Foti,* 648 F.2d 268, 271 (5th Cir. Unit A June 1981). This court broadly interprets Howard's state and federal habeas petitions. *Bledsue v. Johnson,* 188 F.3d 250, 255 (5th Cir. 1999).

## III.   Statement of Facts

The appellate court summarized the evidence at trial, as follows:

> At trial, Houston Police Officer Kirk Milton testified that on November 6, 2008, he was patrolling in an unmarked police vehicle with Sergeant Cullen Bean. While circling around a Shell gas station, known as a center for prostitution, Milton observed appellant come out of the store, pour wine into a Styrofoam cup, and drink it. According to Milton, the station was a "non-premise property," meaning that it did not "have a license for people to stand outside and drink." Milton further explained that it was a violation of law to consume alcohol on non-premise property.

> The two officers approached appellant, identified themselves, and detained him. While conducting a "pat-down" search of appellant incident to arresting him for the alcohol consumption violation, the officers discovered a glass pipe in each of his front pants pockets. Milton explained that such pipes are used by some drug users to smoke crack cocaine. The pipes were subsequently submitted for testing, and an analyst with the Houston Police Department Crime Laboratory testified that residue in the pipes tested positive for cocaine. Officer Milton further testified that around the same time as appellant's arrest, another man was arrested at the gas station for public intoxication.

> During cross-examination by appellant, acting pro se, Milton acknowledged that he could present no evidence that appellant was consuming alcohol on the store's premises except Milton's own testimony. Specifically, Milton acknowledged that he had not preserved either the Styrofoam cup, the bottle of wine, or the wine itself as evidence. He explained, however, that having found the glass pipes on appellant (possession of which could be a felony offense if they were found to contain cocaine), he felt that there was

no need to preserve the evidence pertaining to the lesser (misdemeanor) charge of consuming alcohol on non-premise property. Appellant further questioned Milton regarding the charges against the other man arrested at the gas station. Milton again specifically indicated that the individual was arrested for public intoxication.

Appellant then attempted to introduce into evidence a complaint, along with some booking information, filed by Sergeant Bean allegedly against the other man arrested at the scene of appellant's arrest. The complaint apparently charged the man with "transporting a prostitute to an area for profit." During a conference outside of the jury's presence, the trial judge stressed that the complaint was not filed by Officer Milton. The State then objected to the proffered evidence on the grounds of "hearsay, relevance and improper predicate." The trial court sustained the objection.

Prior to trial, appellant's then counsel filed a motion to suppress any evidence pertaining to the glass pipes. In the motion, counsel stated only very generally that appellant was unlawfully detained and arrested without a warrant. The court carried the motion with the case and held a hearing outside the presence of the jury after the State rested. During the hearing, the State re-offered all of the evidence that had been admitted up to that point in the trial. Appellant then asserted that the State should have had "something in writing" like the "charge or the ticket or the complaint" regarding the consumption of alcohol offense to support the claim of probable cause to arrest. He further emphasized that Officer Milton did not see him with the glass pipes prior to arresting him; Milton only allegedly saw him drinking. According to appellant, in order to support the claim of probable cause based on the alcohol consumption observation, Milton needed to have charged appellant with consuming alcohol on non-premise property. The trial court denied the motion to suppress.

In his case-in-chief, appellant called only one witness, Kevin Bernard Davis, who testified that he saw and spoke to appellant at the gas station the night appellant was arrested. According to Davis, appellant exited the store, left the premises, and did not stand around on the premises drinking anything. Davis then saw two undercover police officers approach appellant. He said that appellant was holding a bag when he left the store, but Davis could not tell what was in the bag.

6

> At the conclusion of the trial, the jury found appellant guilty, found two enhancement allegations true as instructed by the court, and assessed punishment at 18 years in prison. Appellant now attacks the trial court's rulings on the motion to suppress and on the admissibility of the evidence pertaining to the other individual arrested that night.

*Howard v. State,* No. 2010 WL 4069330, at \*1-2 (Tex. App. -- Houston [14th Dist.] 2010, pet. ref'd) (not designated for publication) (footnote omitted).

## IV.   The Fourth Amendment Claims (Grounds 5 & 6)

Howard was originally arrested for a liquor violation. He alleges that after an illegal search of his person, the arresting officer, Officer Milton, found two glass tubes with traces of cocaine, which he seized. Howard was arrested for possessing cocaine. Howard contends the evidence was factually insufficient to support probable cause to arrest him based on the liquor offense. Howard argues that he was pouring a beverage from a bottle that was inside a bag and was not visible to the arresting officer. Howard argues that the officer only had a hunch that Howard was pouring wine and no probable cause to arrest. Howard points out that the officer did not preserve the cup, the bottle, or the beverage as evidence.

Howard's illegal search and seizure claim fails because he is precluded from relitigating his Fourth Amendment claim in this federal habeas proceeding. When, as here, there was an opportunity for full and fair litigation of the Fourth Amendment unconstitutional search claim in state court, a state prisoner may not secure federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search was introduced at his trial. *Stone v. Powell,* 428 U.S. 465, 494 (1976)*; see also Davis v. Blackburn,* 803 F.2d 1371, 1372 (5th Cir. 1986); *Williams v. Brown,* 609 F.2d 216, 220 (5th Cir. 1980). If the state court record reflects that the petitioner's opportunity to challenge the introduction of evidence was "not circumscribed," a federal habeas court will not

7

"scrutinize a state court's application of fourth amendment principles." *Billiot v. Maggio,* 694 F.2d 98, 100 (5th Cir. 1982).

Texas law provided Howard a full opportunity to litigate his Fourth Amendment claims through pretrial motions to suppress evidence. TEX. CODE CRIM. PROC. art. 28.01, § 1(6). Howard has not shown that the state court's process of litigating Fourth Amendment claims is routinely or systematically applied to prevent actual litigation of such claims, or that it was so applied in his case. The bar of *Stone v. Powell* applies despite any state trial court error in deciding the merits of Howard's Fourth Amendment claim. *Andrews v. Collins,* 21 F.3d 612, 631-32 (5th Cir. 1994); *Christian v. McKaskle,* 731 F.2d 1196, 1199 (5th Cir. 1984).

Howard is not entitled to the relief he seeks on this ground.

## V.     The Mental Incompetence Claims (Grounds 1, 3, & 4)

In his first and fourth grounds, Howard claims that he was denied due process because he was mentally incompetent to stand trial and that the trial court judge should have sua sponte conducted an inquiry into Howard's competence. Howard states that the Mental Health and Mental Retardation Authority ("MHMRA") of Harris County had diagnosed him as suffering from major depressive disorder, psychotic disorder, and bipolar disorder. Howard offers a copy of the MHMRA Service Eligibility Plan dated August 28, 2008, showing that he was diagnosed with major depressive disorder. Howard was prescribed service package II, which included a minimum of two hours of treatment per month, medications, and assignment to a professional therapist. Howard had appointments with the MHMRA on September 10 and October 8, 2008. He was prescribed the following medications: Trazodone for treatment of depression on August 15, 2008; Zyprexa for

treatment of psychotic and bipolar disorders on August 26, 2008; and Sertraline for treatment of depression, on August 26, 2008.

Howard argues that the following signs should have led the state court trial judge to conduct a *sua sponte* inquiry into mental competency:

(1)   Howard had over 17 prior convictions but refused a plea offer of 2 years; even though the State's evidence was overwhelming.  Howard's refusal to accept the plea offer was a sign of his inability to consult with his lawyer with a reasonable degree of rational understanding.

(2)   Howard decided to waive his right to counsel and represent himself.

(3)   Howard's responses to the court's questions were nonsensical.  For example, the judge asked Howard what his defense would be, and Howard responded, "Its lucky for you, you have the best seat in the house. . . . It means you can be like Channel Two News and be live on the scene when it happens."

(Docket Entry No. 1-2, Federal Petition, p. 22).

In his second and third grounds for habeas relief, Howard claims that because he was mentally incompetent, he lacked the capacity to waive counsel. (Docket Entry No. 1-2, Federal Petition, Ex. C, pp. 58-60).

"It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope v. Missouri,* 420 U.S. 162, 171 (1975); *see also Dusky v. United States,* 362 U.S. 402, 402 (1960) (per curiam).  "[T]he conviction of an accused person while he is legally incompetent violates due process." *Pate v. Robinson,* 383 U.S. 375, 378 (1966) (citation omitted).

9

In addition to this substantive right, a criminal defendant has a right to "procedures adequate to guard an accused's right not to stand trial or suffer conviction while incompetent." *Holmes v. King,* 709 F.2d 965, 967 (5th Cir. 1983) (citations omitted).  Depending on whether a case involves a procedural or substantive claim, different standards apply:

> To show a substantive violation, an accused must prove an inability either to comprehend or participate in the criminal proceedings . . . . To show a procedural violation, the accused must point to evidence before the trial court that raised a bona fide doubt about competency. Once such a doubt is known to the trial court, it must conduct an adequate hearing.

*Id.*

A defendant is presumed competent to stand trial unless proven incompetent by a preponderance of the evidence.  TEX. CODE CRIM. PROC. ANN. art. 46B.003(b) (West 2006).  A person is incompetent to stand trial if he does not have sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, or a rational as well as factual understanding of the proceedings against him.  TEX. CODE CRIM. PROC. ANN. art. 46B.003.  If evidence suggesting the defendant may be incompetent comes to the trial court's attention, it must determine by informal inquiry whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial.  *Id.* art. 46B.004(c).  A competency inquiry is not required, however, unless the evidence is sufficient for the judge to have a bona fide doubt whether the defendant is legally competent.  *Rojas v. State,* 228 S.W.3d 770, 771 (Tex. App. -- Amarillo 2007, no pet.).  Evidence may be sufficient to create a bona fide doubt if the defendant shows recent severe mental illness, suffers moderate mental retardation, or engages in bizarre acts. *Id.*  The court reviews a trial court's decision not to conduct a formal competency hearing for an abuse of discretion.  *Moore v. State,* 999 S.W.2d 385, 393 (Tex. Crim. App. 1999).  A trial court

10

abuses its discretion if its decision is arbitrary or unreasonable. *Lawrence v. State,* 169 S.W.3d 319, 322 (Tex. App. -- Fort Worth 2005, pet. ref'd).

Under 18 U.S.C. § 4241, a criminal defendant whose competency is in question may be subjected to a mental competency hearing. If neither the defendant nor the government moves for such a hearing, the district court must do so "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." Under § 4241(b), the court "may order" a mental competency examination before a competency hearing. The district court's failure to *sua sponte* conduct a mental competency hearing is reviewed for abuse of discretion. *United States v. Ruston,* 565 F.3d 892, 901 (5th Cir. 2009); *United States v. Messervey,* 317 F.3d 457, 463 (5th Cir. 2002) (citing *United States v. Davis,* 61 F.3d 291, 304 (5th Cir. 1995) ("Whether 'reasonable cause' exists to put the court on notice that the defendant might be mentally incompetent is left to the sound discretion of the district court." (citation omitted))); *United States v. Williams,* 998 F.2d 258, 263 (5th Cir. 1993).

The Fifth Circuit has consistently observed that "'[t]he district court is in the best position to determine the need for a competency hearing.'" *Ruston,* 565 F.3d at 901 (citation omitted). "If the trial court received evidence, viewed objectively, that should have raised a reasonable doubt as to competency, yet failed to make further inquiry, the defendant has been denied a fair trial." *Mata v. Johnson,* 210 F.3d 324, 329 (5th Cir. 2000). The Fifth Circuit has expressly held that "where trial episodes alone constitute the evidence of a defendant's incompetence, those episodes need to be 'sufficiently manifest' for a trial judge to be required to sua sponte order a mental competency

exam." *Messervey,* 317 F.3d at 463 (citing *Davis,* 61 F.3d at 304).  For example, in *Messervey,* the Fifth Circuit found that the trial court did not abuse its discretion in refusing to *sua sponte* conduct a competency hearing when the only basis to doubt the defendant's competency was a few minor episodes of unusual behavior at trial.  *Id.*

The Supreme Court has held that there are "no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed," noting that "the question is a difficult one in which a wide range of manifestations and subtle nuances are implicated." *Drope,* 420 U.S. at 180.  "In determining whether the court should order a mental competency hearing, the court must consider three factors: (1) the existence of a history of irrational behavior, (2) the defendant's demeanor at trial, and (3) prior medical opinion on competency." *Ruston,* 565 F.3d at 902 (citing *Messervey,* 317 F.3d at 463); *see also Davis,* 61 F.3d at 304 (citing *Davis v. Alabama,* 545 F.2d 460, 464 (5th Cir. 1977)).  Although all three factors are "relevant in determining whether further inquiry is required," under certain circumstances, "even one of these factors standing alone" may be sufficient.  *Ruston,* 565 F.3d at 902 (citation omitted).

Due process "does not mandate a full-blown hearing every time there is the slimmest evidence of incompetency."  *Curry v. Estelle,* 531 F.2d 766, 768 (5th Cir. 1976) (per curiam) (citation omitted); *see also United States v. Horovitz,* 584 F.2d 682, 683 n.3 (5th Cir. 1978) (per curiam).  Procedural due process requires that the procedures be "'adequate' to resolve the issue raised."  What is "adequate" "flexes with the fact matrix in which it arises." *Curry,* 531 F.2d at 768.

Howard's trial counsel submitted an affidavit to the state habeas court, in which he testified as follows:

My name is Marcus J. Fleming.  I am an attorney licensed by the State Bar of Texas and in good standing.  I am capable of making this affidavit and have personal knowledge of the following:

1.  I was appointed to represent Mr. Howard on November 10, 2008 for the offense of PCS <lg.  As I do with all my cases, I inquired from the outset as to the mental competency of Mr. Howard.  At all times pertinent, Mr. Howard appeared to this counsel as being competent to stand trial.  Initially, Mr. Howard advised counsel that he had been shot in the abdomen in the year before he was charged with the instant case and had previously been medically treated for that condition.

During our numerous visits over the span of approximately four (4) months, both in court and at the Harris County Jail, Mr. Howard was knowledgeable of the proceedings against him, understood the charges against him, and was able to discuss the facts of his case with a reasonable degree of rational understanding.

Not until March 4, 2009, did Mr. Howard and his family bring to my attention documentation that he had indeed been treated for depression in the past.  I was provided copies of prescriptions for sertraline, zyprexa, hydroxyzine, and trazadone that were prescribed in August of 2008 through MHMRA.  Mr. Howard described his previous medication as being Zoloft and Remeron that he took for depression.

To the best of my recollection, upon my inquiry, Mr. Howard advised me that he neither needed, nor wished to take these medications at the present time.

2.  During each and every visit I had with Mr. Howard, he appeared to be in good spirits, was always willing to discuss the issues surrounding his case, and in my lay opinion, was at all times competent to stand trial.  At no time did he ever appear to have mood swings or seem depressed.  While at times he appeared frustrated with me regarding my not being able to obtain an offer of county jail time from the prosecutor, he nevertheless was always alert and engaged in discussing his case.  Based on my dealings with Mr. Howard throughout my representation, I did not believe it was necessary to have a formal mental health evaluation.

3.  Counsel believes Mr. Howard had sufficient present ability to consult with me with a reasonable degree of rational understanding

13

and that he had a rational as well as factual understanding of the proceedings against him at the time of trial. He was able to provide names of and information about potential witnesses, questioned the veracity of the State's lab report, which resulted in my obtaining an independent expert review, and adequately assisted counsel in preparing a defense.

A motion for continuance was granted after counsel learned from Mr. Howard for the first time in May, 2009, that he was transported with another unnamed person to the police station upon his arrest. When I inquired as to why he had not advised me of this fact earlier, Mr. Howard stated that he assumed I already knew of the person because it should have been in the officer's report. Upon further inquiry with the state, Mr. Howard was found to be correct and the existence and name of the other person was verified and provided by the State. Based on my discussions with Mr. Howard, this evidenced that he was both knowledgeable of the facts and actively engaged in the preparation of his case with counsel.

During each consultation, Mr. Howard was adamant that the offer from the State was too high and that he would only take "county time" as he neither wished to return to the state jail facility, nor go to prison. I explained to Mr. Howard that with each setting, the state's offer would probably get higher and higher. Initially, the home court's chief prosecutor (Lance Long), offered 180 days in the state jail facility if it was accepted before the case was sent to the Impact Court. Mr. Howard rejected such offer, the case was sent to Impact Court, and the offer was withdrawn.

While the case was pending in the Impact Court, Mr. Howard continued to reject the state's offer of 18 months in the state jail or 2 years in TDC. At one setting before trial, Mr. Howard requested that I allow him to discuss the state's offer with Bill Hawkins, the acting chief prosecutor of the Impact Court at the time. Mr. Howard was able to intelligently discuss the plea offer with Mr. Hawkins in my presence without going into the facts of his case, or making any inculpatory or damaging statements. His discussion with Mr. Hawkins lasted approximately 20 minutes. Mr. Howard was cordial and professional in his discussions with Mr. Hawkins.

Ultimately though, my relationship with Mr. Howard soured somewhat as we got closer to trial because I could not obtain an offer from the State that he would accept. On May 4, 2009, Mr. Howard advised me that he wished to represent himself in this matter. I

14

explained to Mr. Howard that in order for this to happen, he would have to advise the court and satisfy the judge that he was able to do so competently.  On June 6, 2009, Mr. Howard petitioned the court to represent himself at trial.  After sufficient inquiry from Judge Brian Rains as to whether Mr. Howard was competent to stand trial and represent himself pro se, the court granted his request and excused me from the matter.

Mr. Howard and I had discussed possible theories and strategy for his defense.  While I did not agree with some of his suggestions, I did believe that the theory of the defense should be the determination of whether the officers could reasonably have observed Mr. Howard commit an offense (consuming alcohol on the premises illegally) from their vantage point, and thus whether they had probable cause to detain Mr. Howard and subsequently search him.  Mr. Howard seemed to get hung up on the premise that the officers should have actually arrested, charged, and booked him with the Class C offense of consumption on an unlicensed premises before searching him.  I explained to Mr. Howard that it was not required that officers actually charge one with the Class C offense if there was a greater level charge to pursue, such as possession of a controlled substance. He did not agree with my assessment.

On the day of trial, Mr. Howard demanded that I agree with his theory of the defense and I advised I could not in good conscience proceed with his particular theory, therefore, he then requested to proceed pro se.

Based on the foregoing, it is this counsel's belief and opinion that at all times pertinent to this matter, Mr. Howard was neither incompetent to stand trial, nor required to have a formal evaluation to determine whether he was legally competent to stand trial.

*Ex parte Howard,* Application No. 56,936-03 at 93-95.

The state habeas court found:

3.      The applicant was initially represented in cause number 1190594 (the primary case) by counsel Marcus Fleming.

4.      On June 5, 2009, the applicant requested his counsel be discharged and he be allowed to represent himself.  (2 R.R. 6).

5.      In response to the applicant's request to represent himself, the court enquired and learned that the applicant: 1) had a GED, 2) had some trade school, 3) had previous experience in as much as he had been through the felony court system on 16 separate occasions, 4) knew the range of punishment for the crime for which he was charged, 5) understood the rulings for objections, 6) had experience with felony jury trials on two prior separate occasions, 7) understood a charge had elements that had to be proven, 8) knew the state had the burden of proof, 9) knew the legal definition of possession, 10) knew basically the purpose for voir dire, 11) believed he had a defense that counsel would not advance, 12) knew the court would not allow hybrid representation, 13) understood opening and closing statements, and 14) understood the role of the judge.  (2 R.R. 6-15).

6.      The applicant acknowledged he had been advised of the "pitfalls" of self-representation and persisted in his desire to represent himself.  (2 R.R. 14).

7.      The court granted the applicant's request to proceed pro se. (2 R.R.  15).

8.      Upon discharge of appointed counsel, the applicant further demonstrated his competency and understanding of the proceedings by requesting defense counsel turn over the photographs that had been taken during counsel's preparation of the applicant's defense. (2 R.R. 15-16).

9.      For competency to become an issue at the trial court level, there must be some suggestion to the court that the defendant is incompetent.  *Id.* art[.] 46B.004(c).

10.     To the extent that the applicant is claiming trial court error in the court's failure to *sua sponte* request the applicant be evaluated for competency, the applicant's claim is a record claim which needed to be raised on direct appeal.  *Ex parte Cruzata,* 220 S.W.3d 518, 520 (Tex. Crim. App. 2007).

11.  The applicant's claim that his due process rights were violated in that he was incompetent to stand trial is directly contradicted by the record, where the applicant repeatedly demonstrates he <u>was</u> competent.

12.     According to the credible affidavit of Marcus Fleming, counsel spoke with the applicant on a number of occasions, was

16

aware of the applicant's MHMR history, and states that the applicant never appeared to be anything other than legally competent.

13.     The record demonstrates the applicant was legally competent and that his waiver of counsel and choice to represent himself was voluntary.

*Ex parte Howard,* Application No. 56,936-03 at 98-99.

The record does not demonstrate that Howard's decision to go to trial and represent himself evidenced his lack of competency to stand trial.  Rather, the record reveals that Howard decided to stop cooperating with defense counsel over a disagreement about what strategy to pursue.  "A defendant who has it 'within his voluntary control to . . . cooperat[e],' is not incompetent merely because he refuses to cooperate."  *United States v. Simpson,* 645 F.3d 300, 306 (5th Cir.), *cert. denied,* —— U.S. ——, 132 S. Ct. 541 (2011) (quoting *United States v. Joseph,* 333 F.3d 587, 589 (5th Cir. 2003)).  And nothing in the record shows that Howard made any inappropriate outbursts during the proceedings before trial.  There was no evidence showing that Howard had a recent severe mental illness, that he suffered moderate mental retardation, or that he engaged in bizarre acts.  There was no basis to conclude that his conduct or his perception was divorced from reality.  Each time Howard was questioned by the trial judge, the  responses demonstrated that he fully understood the nature of the proceedings.

The state trial court did not err by not conducting a mental competency hearing.  The evidence was insufficient to create a reasonable bona fide doubt in the mind of the judge whether Howard was legally competent.  The trial court did not abuse its discretion in not conducting a formal competency hearing.  Nor does the record show that Howard's waiver of counsel was involuntary or ineffective because he was incompetent.

The state habeas court found the facts stated in trial counsel's affidavit to be true and concluded that Howard was competent to stand trial. *Ex parte Howard,* Application No. 56,936-03 at 99. The Court of Criminal Appeals expressly based its denial of habeas relief on this finding. These credibility determinations are entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1); *Moore v. Johnson,* 194 F.3d 586, 604 (5th Cir. 1999) (op. on reh'g). Howard has not produced clear and convincing evidence to rebut this finding. The state court's decision was not contrary to clearly established federal law. Howard is not entitled to habeas relief on this ground. 28 U.S.C. § 2254(d)(1).

## VI.    The Denial of Substitute Counsel Claim (Ground 2)

Howard asserts that the trial court denied his request for new counsel and "forced" him to represent himself. Howard complains that his court-appointed counsel, Marcus Fleming, had no defense, leaving Howard no choice but to represent himself. Liberally construed, Howard argues that Fleming had a conflict because he was unwilling to pursue the defense theory Howard proposed. That theory was that Howard was never charged with a liquor violation, so the arresting officer lacked probable cause and the crack pipes found on his person were the fruits of an illegal search.

"Under the Sixth Amendment, if a defendant has a constitutional right to counsel, he also has a corresponding right to representation that is free from any conflict of interest." *United States v. Vaquero,* 997 F.2d 78, 89 (5th Cir. 1993). A petitioner has the burden of showing that an actual conflict of interest adversely affected counsel's performance. *Cuyler v. Sullivan,* 446 U.S. 335, 348-50 (1980); *United States v. Villareal,* 324 F.3d 319, 327 (5th Cir. 2003). "An 'actual conflict' exists when defense counsel is compelled to compromise his or her duty to loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or

18

current client." *Perillo v. Johnson,* 205 F.3d 775, 781 (5th Cir. 2000). But "[t]he mere possibility of a conflict, absent some showing that the attorney actively represented conflicting interests, is not sufficient." *Cuyler,* 446 U.S. at 348. "To prevail, a defendant must identify 'some plausible defensive strategy or tactic [that] might have been pursued but was not, because of the conflict of interest.'" *Hernandez v. Johnson,* 108 F.3d 554, 560 (5th Cir. 1997) (quoting *Perillo v. Johnson,* 79 F.3d 441, 449 (5th Cir. 1996)).

Granting a motion to discharge defense counsel is within the trial judge's discretion. A Sixth Amendment violation occurs only if a court refuses to inquire into a seemingly substantial complaint about defense counsel. Otherwise, the trial judge has broad discretion to decide whether to grant a request for the substitution of counsel. The right to counsel cannot be manipulated to interfere with the orderly procedures of the court or the fair administration of justice. *See Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993). While a criminal defendant has an absolute right to be represented by retained counsel of his choosing and must be informed of such right by the court, if the defendant is indigent and unable to retain private counsel, a lawyer will be appointed by the court. An indigent defendant is not entitled to have a particular lawyer represent him. Nor is an indigent defendant entitled to a different appointed lawyer unless good cause is shown. *See Morris v. Slappy*, 461 U.S. 1 (1983). The Sixth Amendment right to counsel "comprehends a qualified right to select and be represented by counsel of choice," belonging solely to criminal defendants possessing sufficient assets to retain such counsel. *See United States v. Bissell*, 866 F.2d 1343, 1351 (11th Cir. 1989).

The Fifth Circuit has stated:

> In order to warrant a substitution of counsel during trial, the defendant must show good cause, such as a conflict of interest, a

19

> complete breakdown in communication or an irreconcilable conflict
> which leads to an apparently unjust verdict.  If a court refuses to
> inquire into a seemingly substantial complaint about counsel when he
> has no reason to suspect the bona fides of the defendant, or if on
> discovering justifiable dissatisfaction a court refuses to replace the
> attorney, the defendant may then properly claim denial of his Sixth
> Amendment right.  In the absence of a conflict which presents such
> a Sixth Amendment problem, the trial court has discretion to decide
> whether to grant a continuance during the course of trial for the
> substitution of counsel, and that decision will be reversed only if the
> court has abused its discretion.

*United States v. Young*, 482 F.2d 993 (5th Cir. 1973) (quoting *United States v. Calabro*, 467 F.2d

973, 986 (2d Cir. 1972)) (citations omitted).

A court violates the Sixth Amendment if it allows a defendant to represent himself without

first obtaining a valid waiver of counsel.  *See, e.g., United States v. Medina*, 161 F.3d 867, 870 (5th

Cir. 1998).  A defendant cannot be forced to choose between conflicted counsel and no counsel at

all.  A waiver of counsel that results from those circumstances is not valid.  *See Dunn v. Johnson*,

162 F.3d 302, 307 (5th Cir. 1998).  But "[a] defendant's refusal without good cause to proceed with

able appointed counsel constitutes a voluntary waiver of that right."  *Richardson v. Lucas*, 741 F.2d

753, 757 (5th Cir. 1984).  "The question [of voluntariness] therefore boils down to whether

[Howard] demonstrated good cause for the substitution of assigned counsel."  *United States v.

Fields*, 483 F.3d 313, 350 (5th Cir. 2007) (quoting *McKee v. Harris*, 649 F.2d 927, 931 (2d Cir.

1981)).  A defendant is entitled to substitute counsel only if the court finds significant interference

with the existing attorney's "ability to provide zealous representation."  *Fields*, 313 F.3d at 350

(citing *United States v. Boone*, 437 F.3d 829, 839 (8th Cir.), *cert. denied*, 549 U.S. 870 (2006)).  A

trial court reasonably may rely on defense counsel's assessment of actual or potential conflict.  *See*

*Holloway v. Arkansas*, 435 U.S. 475, 485 (1978) (stating that the appointed attorney "is in the best

position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial"). *United States v. Creel*, 158 F. App'x 627, 628 (5th Cir. 2004) (unpublished) (defendant's "disagreements with counsel" did not "constitute[ ] good cause for him to receive a new attorney").

Howard maintains that he requested the appointment of new counsel. The court has reviewed the record and finds no support for this assertion. Howard points to no evidence, and the court finds none in the record, that his appointed trial counsel failed in his responsibilities to Howard or that counsel was otherwise burdened by an actual conflict of interest. Howard fails to meet his burden of demonstrating an actual conflict existed so as to establish a violation of his Sixth Amendment rights.

Howard has not shown that his disagreements with counsel constituted good cause for him to receive a new attorney. *See Morris v. Slappy*, 461 U.S. 1, 13-14 (1983); *United States v. Young*, 482 F.2d 993, 995 (5th Cir. 1973). Howard has failed to show how any conflict of interest prejudiced him.

Howard may argue that his waiver of assistance of counsel was not knowing or intelligent, making his self-representation violate the Sixth Amendment. The Sixth Amendment grants defendants the constitutional right to represent themselves in federal court. *Faretta v. California*, 422 U.S. 806, 812-21 (1975). For a defendant to exercise his right to self-representation, he must "'knowingly and intelligently' forego counsel, and the request to proceed *pro se* must be 'clear and unequivocal.'" *United States v. Martin*, 790 F.2d 1215, 1218 (5th Cir.), *cert. denied*, 479 U.S. 868 (1968) (citations omitted). The assertion of this right proceeds in two steps: first, the defendant must unequivocally inform the court of his desire to represent himself; and, second, "the court must

conduct a *Faretta* hearing to determine whether the defendant is 'knowingly and intelligently' forgoing his right to appointed counsel and whether, by post-invocation action, he has waived the request [to proceed *pro se*]." *United States v. Cano*, 519 F.3d 512, 516 (5th Cir. 2008). "Where a fundamental constitutional right, such as the right to counsel, is concerned, courts indulge every reasonable presumption against waiver." *Burton v. Collins*, 937 F.2d 131, 133 (5th Cir. 1991), *cert. denied*, 502 U.S. 1006 (1991). When a defendant, unskilled in the law, does not make a clear election to forego counsel, a court should not infer that the defendant has opted to take his own defense. *Id.*

The following exchange took place before the trial began:

THE COURT:          All right. Anything further?

THE DEFENDANT: Yeah, I would like to represent myself.

THE COURT:          And why would you want do that?

THE DEFENDANT: Because me and my attorney are not getting along on my defense.

THE COURT:          Is that the only reason?

THE DEFENDANT: Yeah.

THE COURT:          Because you and him don't agree, you think you can represent yourself better?

THE DEFENDANT: I feel like that's the only choice I have.

THE COURT:          Well, how far did you go in school?

THE DEFENDANT: I got a GED.

THE COURT:          Anything past that?

THE DEFENDANT: I took trade.

THE COURT:          Any legal training?

THE DEFENDANT: No legal training whatsoever.

THE COURT:          No law school?

THE DEFENDANT: No, sir.

THE COURT:          No business school?

THE DEFENDANT: No business school.


THE COURT:          Nothing in the way of training about any area of the law at all?

THE DEFENDANT: No, none other than my prior experiences.

THE COURT:          Your prior experiences being 16 felony convictions?

THE DEFENDANT: Yeah.

THE COURT:          Okay. So you, at least, have the experience of coming to court at least 16 times in the felony court and there's a couple of misdemeanors as well.

THE DEFENDANT: Okay.

THE COURT:          What are you -- tell me what the range of punishment in this case is.

THE DEFENDANT: Two to 20, sir.

THE COURT:          And tell me if an objection is ruled -- an objection is made and the Court sustains it, what does that mean?

THE DEFENDANT: They sustain it, that means they grant it. And if they overrule it they don't grant it.

THE COURT:          So you know that part. How many trials have you had?

THE DEFENDANT: This is actually my third one.

23

THE COURT:          What happened to the others?

THE DEFENDANT:  One I got acquitted.  One we settled out during the process of picking the jury and this is the third one.

THE COURT:          Do you -- do you know how the rules work?

THE DEFENDANT:  I know basically, Your Honor.  I know that we have -- there are elements to the indictment that have to be proven. I know that the burden of proof is on the State.  I know that possession, the three C's, care, custody, and control.  In that manner I know that we have to advise the jury -- I think it's called voir dire or voir dire or something before we -- before the trial starts and advise them what this trial is going to be about and find out if anybody have any problem with assuming me guilty until I'm actually proven -- I mean, assuming me innocent until I'm actually proven guilty.

THE COURT:          Well, you've got that down.

THE DEFENDANT:  Yes, sir.  I think, sir, Your Honor, I think if -- Mr. Fleming had exhausted his effort in doing all the -- trying to locate this witness or whatever, which I couldn't do for myself, and I think that he's helped me as far as he's going to help me or can help me at this point in time.  We can't reach a conclusion on what part of a defense or he seems to feel that I just don't have any defense whatsoever.  And --

THE COURT:          Let me interrupt you.  Weren't you arrested by the police and searched and that's how they found the drugs?

THE DEFENDANT:  Yes, sir.

THE COURT:          Okay.  They don't get anymore simple than that.

THE DEFENDANT:  Yes, sir.

THE COURT:          So when you talk about a defense maybe I'm not following.  I'm not going to ask you what you think your defense is, but you know when somebody -- when the evidence is from the police officer, I'm assuming, is that on such and such a date I came into contact with an individual and that's the individual over there,

24

and I arrested that individual for an offense.  And pursuant to  that arrest, I searched him and found drugs.

THE DEFENDANT:  Right.

THE COURT:        They don't get anymore complicated or simple than that.

THE DEFENDANT:  Yes, sir.

THE COURT:        So when somebody talks about a defense -- I mean, I've been doing this for 30 something years now, and I don't know what the defense would be to arresting somebody and searching them.

THE DEFENDANT:  Yes, sir.

THE COURT:        I mean, the only thing there has been a Motion to Suppress filed and if a Judge were to grant the motion, then the evidence wouldn't come in.  But that hadn't been heard yet.

THE DEFENDANT:  Right.

THE COURT:        That's the only defense I could think of for an illegal arrest.

THE DEFENDANT:  Yes, sir.

THE COURT:        Okay.

THE DEFENDANT:  Well, you'll be – you'll be tuned in on the front row seat to hear --

THE COURT:        The first time I've ever heard a defense --

THE DEFENDANT:  Yes, sir.

THE COURT:        And so the reason – again, the reason you want to represent yourself is because you don't think that Mr. Fleming, even though he's worked as hard as I've ever seen a lawyer work for an individual trying to get your information for this so-called witness, he's had the State help him, he's had his investigators help him, so he has gone over and beyond what I see a lot of lawyers do to help you.

And now because he doesn't agree with your defense, whatever it is you don't think he can do a good job?

THE DEFENDANT:  I'm just not willing to take that chance, Your Honor.  So I have no problem with him, but I have no – I'm not willing to take that chance today.

THE COURT:          So you think you have the court smarts to represent yourself?

THE DEFENDANT:  Your Honor, let me ask you this.  Can I ask you a question, sir?

THE COURT:          Sure.

THE DEFENDANT:  If -- isn't it or hasn't it been in certain cases to where like if it's anything that I need to know -- I'm not saying teach me law as we go through the trial, but I'm saying he couldn't advise me on the side or nothing like that?

THE COURT:          No, sir.

THE DEFENDANT:  I just be on my own.

THE COURT:          The rules have changed.  Once -- if I let you represent yourself --

THE DEFENDANT:  Yes, sir.

THE COURT:          -- you're going to be at that table by yourself.

THE DEFENDANT.  Okay.  Yes, sir.

THE COURT:          And if you ever have a question you can't ask it.

THE DEFENDANT:  Can't ask anyone?

THE COURT:          No, you're on your own.

THE DEFENDANT:  Okay.

THE COURT:          Now, the problem that I'm seeing is I've been in this position before --

THE DEFENDANT:  Yes, sir.

THE COURT:         -- where I've seen individuals want to represent themselves.  I've let them --

THE DEFENDANT:  Okay.

THE COURT:         -- and the next thing they know is they're going down the tubes.

THE DEFENDANT:  What does that mean?

THE COURT:         That means that they're over their head.  They're drowning in the legalese.  Because just like you said, you may have a question and you have got nobody to turn to.

THE DEFENDANT:  Right.

THE COURT:         And your lawyer at least has the legalese and the smarts --

THE DEFENDANT:  Right.

THE COURT:         – to know what objections to make --

THE DEFENDANT:  Right.

THE COURT:         -- what not to make.  You don't get to make speeches.  You get to ask questions and make objections.

THE DEFENDANT:  But I do get to make a speech, you know, opening and closing, right?

THE COURT:         That's the only time.

THE DEFENDANT:  Yes, sir, I understand that.  Yes, sir, I'm prepared.  I still want to represent myself.

THE COURT:         So you're willing to just sit there by yourself --

THE DEFENDANT:  Yes, sir.

THE COURT:         — and let the chips fall where they may?

THE DEFENDANT:  Let the chips fall where they may, sir.

THE COURT:          Okay.

THE DEFENDANT:  I, Ernest Howard -- Eugene Howard, the Defendant in this, do hereby wish to represent myself, being acknowledged of all the, you know, pitfalls, and I still wish to represent myself. Thank you.

THE COURT:          Okay.  I'll let you represent yourself.

THE DEFENDANT:  Thank you, sir.

(Reporter's Record, Vol. II, pp. 6-14).

The record shows that Howard informed the court of his desire to represent himself, (Reporter's Record, Vol. II, p. 6).  His statements at the hearing revealed that he wished to challenge the admission of the crack pipes during his arrest, but that his attorney would not do so for strategic reasons.  Howard wanted to have a court-appointed attorney, but one who would completely defer to him on all matters of strategy.  Attorneys cannot perform their duties adequately under such a limit.  The court explained the benefits of having appointed counsel and the pitfalls of proceeding without counsel.  Howard asked to proceed *pro se*.

"In order to determine whether the right to counsel has been effectively waived, the proper inquiry is to evaluate the circumstances of each case as well as the background of the defendant." *Wiggins v. Procunier*, 753 F.2d 1318, 1320 (5th Cir. 1985).  In *Martin*, the Fifth Circuit articulated a list of factors to be considered in determining whether a defendant's motion has been "knowingly and intelligently" made:

> The Court must consider the defendant's age and education, and other background, experience, and conduct.  The Court must ensure that the waiver is not the result of coercion or mistreatment of the defendant, and must be satisfied that the accused understands the nature of the

28

charges, the consequences of the proceedings, and the practical
meaning of the right he is waiving.

*Martin*, 790 F.2d at 1218 (citations omitted).

Applying these factors makes it clear that Howard's waiver was knowingly, voluntarily, and intelligently made.  The trial court informed Howard of his right to counsel and warned of the risks of representing himself.  The trial court questioned Howard about his background, education, and experience.  The trial court also had ample opportunity to observe Howard.  This court is satisfied that Howard understood his rights and that the trial court committed no error by allowing him to proceed *pro se*.

Howard clearly and unequivocally waived his Sixth Amendment right to the assistance of counsel.  The Fifth Circuit has held that a defendant's statutory right to choose *pro se* or attorney representation is "disjunctive"; a defendant has a right to one or the other, but not a combination of the two.  *United States v. Daniels*, 572 F.2d 535, 540 (5th Cir. 1978).  Howard was constitutionally guaranteed the right to represent himself if he so chose, or to receive competent representation from an attorney, but the availability of standby counsel to provide a combination of the two was not constitutionally required.  If Howard had no right to standby counsel, standby counsel's failure to assist could be a violation of his Sixth Amendment rights.  *United States v. Mikolajczyk*, 137 F.3d 237, 246 (5th Cir. 1998).

The state habeas court found:

3.     The applicant was initially represented in cause number 1190594 (the primary case) by counsel Marcus Fleming.

4.     On June 5, 2009, the applicant requested his counsel be discharged and he be allowed to represent himself.  (2 R.R. 6).

5.      In response to the applicant's request to represent himself, the court enquired and learned that the applicant: 1) had a GED, 2) had some trade school, 3) had previous experience in as much as he had been through the felony court system on 16 separate occasions, 4) knew the range of punishment for the crime for which he was charged, 5) understood the rulings for objections, 6) had experience with felony jury trials on two prior separate occasions, 7) understood a charge had elements that had to be proven, 8) knew the state had the burden of proof, 9) knew the legal definition of possession, 10) knew basically the purpose for voir dire, 11) believed he had a defense that counsel would not advance, 12) knew the court would not allow hybrid representation, 13) understood opening and closing statements, and 14) understood the role of the judge.  (2 R.R. 6-15).

6.      The applicant acknowledged he had been advised of the "pitfalls" of self-representation and persisted in his desire to represent himself.  (2 R.R. 14).

7.      The court granted the applicant's request to proceed pro se. (2 R.R. 15).

8.      Upon discharge of appointed counsel, the applicant further demonstrated his competency and understanding of the proceedings by requesting defense counsel turn over the photographs that had been taken during counsel's preparation of the applicant's defense. (2 R.R. 15-16).
. . .

13.     The record demonstrates the applicant was legally competent and that his waiver of counsel and choice to represent himself was voluntary.

*Ex parte Howard,* Application No. 56,936-03 at 98-99.

The state habeas court found the facts stated in trial counsel's affidavit to be true and concluded that Howard waived his right to counsel and elected to represent himself at trial.  *Ex parte Howard,* Application No. 56,936-03 at 99.  The Court of Criminal Appeals expressly based its denial of habeas relief on this finding.  These credibility determinations are entitled to a presumption of

correctness.  28 U.S.C. § 2254(e)(1); *Moore v. Johnson,* 194 F.3d 586, 604 (5th Cir. 1999) (op. on

reh'g).  Howard has not produced clear and convincing evidence to rebut this finding.

      Howard is not entitled to habeas relief on this ground.  28 U.S.C. § 2254(d)(1).

## VII.   The Ineffective Assistance of Appellate Counsel Claim (Ground 7)

      Persons convicted of a crime are entitled to effective assistance of counsel on direct appeal.

*See Evitts v. Lucey,* 469 U.S. 387 (1985); *Strickland v. Washington,* 466 U.S. 668, 687 (1984).  The

Sixth Amendment does not require appellate counsel to raise every nonfrivolous claim available on

appeal.  Counsel's effort to serve his client to the best of his professional ability will often depend

on strategic choices about which claims to pursue on appeal.  *Jones v. Barnes,* 463 U.S. 745, 751-52

(1983); *Smith v. Robbins,* 528 U.S. 259, 288 (2000) ("Notwithstanding *Barnes,* it is still possible to

bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to

demonstrate that counsel was incompetent.").

      On appeal, Howard raised two issues.  First, Howard contended that the state trial court erred

in denying his motion to suppress evidence relating to the two glass pipes allegedly found on his

person.  Howard asserted that Officer Milton lacked probable cause for the alcohol-consumption

offense, and that the warrantless arrest and search violated the Fourth Amendment and Article I,

section 9 of the Texas Constitution.  Second, Howard contended that the trial court erred in

sustaining the prosecutor's objection when Howard offered the ticket and booking information

pertaining to the other individual arrested on the night and at the location where Howard was

arrested.  (Appellant's Brief, p. 4).

      The record does not show that the claims based on incompetence to stand trial, the denial of

the assistance of counsel, incompetence to waive counsel, the trial court's failure to inquire into

competence, the factual sufficiency of the evidence, and the legality of the search and seizure, were clearly stronger than any of the claims raised by appellate counsel.  To the contrary, the record shows that these claims were considerably weaker.  This court has considered and rejected each of these claims on the merits.

This court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.  Howard has not overcome the presumption that, under the circumstances, the challenged action might be considered sound appellate strategy.  In addition to deficient performance, to prevail on his habeas claim, Howard must also show prejudice.  The Supreme Court has defined prejudice as "a reasonable probability that, but for his counsel's unreasonable failure . . . he would have prevailed on his appeal." *Robbins,* 528 U.S. at 285; *see also Moreno v. Dretke,* 450 F.3d 158, 168 (5th Cir. 2006) ("When the petitioner challenges the performance of his appellate counsel, he must show that with effective counsel, there was a reasonable probability that he would have won on appeal.").  "A reasonable probability is a probability sufficient to undermine confidence in the outcome," *Strickland,* 466 U.S. at 694.  This requires a "'substantial,' not just 'conceivable,' likelihood of a different result." *Pinholster,* 131 S. Ct. at 1403 (quoting *Harrington v. Richter,* 562 U.S. ——, ——, 131 S. Ct. 770, 777 (2011)).

The state habeas court found: "16. The applicant's claims of ineffective assistance of counsel on appeal are without merit, as the issues the applicant alleges counsel should have addressed either were addressed, or are directly contradicted by the record." *Ex parte Howard,* Application No. 56,936-03 at 99.  The record does not indicate that the state court's determination that counsel was not deficient and that Howard was not prejudiced was objectively unreasonable. *See Pinholster,* 131 S. Ct. at 1411 (holding that "[e]ven if the Court of Appeals might have reached a different

conclusion as an initial matter," the question under AEDPA review is whether the state court unreasonably applied Supreme Court precedent); *Harrington*, 131 S. Ct. at 785 ("[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." (internal quotation marks omitted)); *see also Neal,* 286 F.3d at 246 ("The precise question . . . is whether the [state] court's ultimate conclusion . . . is objectively unreasonable.").

The state court decisions that Howard was mentally competent and made an effective, informed, voluntary decision to represent himself were a reasonable application of the law. The state court was reasonable in finding that it was not ineffective assistance of appellate counsel not to bring a likely meritless claim on appeal. Under the deferential AEDPA review, the state court's conclusions that there was no prejudice, and no ineffective assistance of appellate counsel under *Strickland*, were objectively reasonable. *See Neal v. Puckett,* 286 F.3d 230, 246 (5th Cir. 2002).

## VIII.  Conclusion

The respondent's motion to dismiss, (Docket Entry No. 12), is granted. Howard's petition for a writ of habeas corpus is denied. This case is dismissed. Any remaining pending motions are denied as moot.

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a petitioner must obtain a certificate of appealability before he can appeal the district court's decision. 28 U.S.C. § 2253(c)(1). This court will grant a COA only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court has denied a claim on procedural grounds, however, the petitioner must also

demonstrate that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*.

Because Howard has not made the necessary showing, this court will not issue a COA.

SIGNED on April 10, 2013, at Houston, Texas.

Lee H. Rosenthal
United States District Judge